UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELORES POLK, et al.,<br><br>          Plaintiffs,<br><br>   v.<br><br>BETTY YEE, et al.,<br><br>          Defendants. | No. 2:18-cv-2900-KJM-KJN<br><br><br><br>ORDER |

        In this § 1983 putative class action, defendants Betty Yee, State Controller of California, and SEIU Local 2015 ("SEIU" or "Union") have both filed motions to dismiss. For the following reasons, the court GRANTS both motions, with the leave to amend to the extent allowed below.

I.    BACKGROUND

        Plaintiffs are personal care providers to persons with disabilities who are enrolled in a Medicaid program called California's In-Home Support Services ("IHSS"). First Am. Compl. ("FAC"), ECF No. 14, ¶¶ 13–15, 27. Because plaintiffs are employed by IHSS recipients, they are paid by the State Controller and California law deems them public employees for unionization purposes. FAC ¶ 16. SEIU Local 2015 ("Union" or "SEIU") is the exclusive bargaining representative for IHSS providers in 47 California counties. *Id.* ¶ 17.

/////

1    In joining the Union, plaintiffs consented to a dues deduction agreement that
2 authorized the state to deduct union dues from plaintiffs' paychecks for a certain period. *Id.*
3 ¶¶ 20–22, 29 (Polk), 37 (Herrick), 43 (Loi), 48 (Loi), 53 (McKay), 58 (Montoya), 64 (Ungar).
4 The agreements make the deduction authorization irrevocable except during an annual period
5 ranging from ten to thirty days in duration, during which a person can send a revocation notice to
6 SEIU. *Id.* ¶ 24. Plaintiffs all notified SEIU they no longer consented to the dues deduction, but
7 they did so outside of the revocation period. *See id.* ¶¶ 69, 90; *see, e.g.*, ¶ 66–68 (Ungar).
8 Accordingly, the State Controller continued to deduct union dues from plaintiffs' paychecks,
9 allegedly without their consent. *Id.* ¶¶ 26, 90.
10    Plaintiffs bring this suit under 42 U.S.C. § 1983 on behalf of themselves and two
11 putative classes, alleging deprivation of their First Amendment right to refrain from subsidizing
12 the union's speech through dues, as provided in *Harris v. Quinn*, 573 U.S. 616, 656 (2014) and
13 *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486 (2018).
14 *Id.* ¶¶ 1, 69. Plaintiffs allege defendants violate their First Amendment rights in two ways: (1) by
15 deducting union dues from plaintiffs' paychecks without a valid First Amendment waiver (claim
16 one); and (2) by enforcing the Union's revocation policy with respect to the dues deductions
17 (claim two). *Id.* at 17, 19. Plaintiffs also allege defendants violated the federal Medicaid statute,
18 42 U.S.C. § 1396a(a)(32), by diverting a portion of Medicaid payments to the union in the form
19 of deducted dues (claim three). *Id.* at 20–21
20    Defendant Yee moved to dismiss under Rule 12(b)(1) and Rule 12(b)(6), Yee
21 MTD, ECF No. 19, plaintiffs oppose, Yee Opp'n, ECF No. 31, and Yee replied, Yee Reply, ECF
22 No. 35. Defendant SEIU filed a separate motion to dismiss, SEIU MTD ECF No. 24, plaintiffs
23 oppose, SEIU Opp'n, ECF No. 32, and SEIU replied, SEIU Reply, ECF No. 34. Both motions
24 overlap substantially, so the court addresses the motions together here.
25    On May 9, 2019, plaintiffs filed a notice of supplemental authority, notifying the
26 court that the Centers for Medicare & Medicaid Services issued a Final Rule on May 6, 2019,
27 regarding the reassignment of Medicaid provider claims, 8 Fed. Reg. 19718 (May 6, 2019). ECF
28 No. 38. Plaintiffs filed an additional notice of supplemental authority on November 11, 2019.

1  ECF No. 46, and SEIU responded, ECF No. 47.  Defendant SEIU also filed seventeen notices of
2  supplemental authority.  ECF Nos. 36, 39, 41, 43, 45, 48, 50–59.  Plaintiffs have responded to one
3  of these notices.  ECF No. 49.  The court has considered the supplemental authority and, as
4  necessary, addresses it below.

5  II.     LEGAL STANDARDS

6  A party may move to dismiss a complaint for "failure to state a claim upon which
7  relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The court may grant the motion only if the
8  complaint lacks a "cognizable legal theory" or if its factual allegations do not support a
9  cognizable legal theory.  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th
10 Cir. 2013).  A complaint must contain a "short and plain statement of the claim showing that the
11 pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), though it need not include "detailed factual
12 allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But "sufficient factual
13 matter" must make the claim at least plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).
14 Conclusory or formulaic recitations of elements do not alone suffice.  *Id.* (citing *Twombly*, 550
15 U.S. at 555).  In a Rule 12(b)(6) analysis, the court must accept well-pleaded factual allegations
16 as true and construe the complaint in plaintiff's favor.  *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93–
17 94 (2007).

18 Under Federal Rule of Civil Procedure 12(b)(1), a defending party may move for
19 dismissal for lack of subject matter jurisdiction.  "A Rule 12(b)(1) jurisdictional attack may be
20 facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation
21 omitted).  A facial attack claims the "allegations contained in a complaint are insufficient on their
22 face to invoke federal jurisdiction," whereas a factual attack "disputes the truth of the allegations
23 that, by themselves, would otherwise invoke federal jurisdiction."  *Id.*  If there is ambiguity as to
24 whether the attack is facial or factual, the court applies a facial analysis. *See Wichansky v. Zoel*
25 *Holding Co., Inc.*, 702 F. App'x 559, 560–61 (9th Cir. 2017) (district court erred in construing
26 defendants' 12(b)(1) motion as factual, rather than facial, when ambiguity existed).  The court
27 treats a jurisdictional "facial attack as it would a motion to dismiss under Rule 12(b)(6):
28 Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's

favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation omitted).

If a motion to dismiss is granted, the question arises whether the court should grant leave to amend. Federal Rule of Civil Procedure 15(a)(2) states, "[t]he court should freely give leave [to amend pleadings] when justice so requires," and the Ninth Circuit has "stressed Rule 15's policy of favoring amendments," *Ascon Props. Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). "In exercising its discretion [to grant or deny leave to amend] 'a court must be guided by the underlying purpose of Rule 15—to facilitate decision on the merits rather than on the pleadings or technicalities.'" *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)). However, "the liberality in granting leave to amend is subject to several limitations." *Ascon Props.*, 866 F.2d at 1160 (citing *Leighton*, 833 F.2d at 186). "Leave need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay." *Id.* In addition, a court should look to whether the plaintiff has previously amended the complaint, as "the district court's discretion is especially broad 'where the court has already given a plaintiff one or more opportunities to amend [its] complaint.'" *Id.* at 1161 (alteration in original) (quoting *Leighton*, 833 F.2d at 186 n.3).

III.    DISCUSSION

    A.    State Action

        1.    Legal Standard

To state a claim under § 1983, a plaintiff must first show "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986)). "[C]onstitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

A court decides whether defendant was acting under state law by using a two-part test established in *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982). First, the court asks

4

"whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Id.* Second, the court asks whether defendant "may be appropriately characterized as [a] 'state actor[].'" *Id.* State action can exist only when both questions are answered in the affirmative. *See Collins v. Womancare*, 878 F.2d 1145, 1151 (9th Cir. 1989) (citing *Lugar*, 457 U.S. at 937–39).

"The Supreme Court has articulated four tests for determining whether a non-governmental person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citation omitted). Plaintiffs contend SEIU is a state actor only under the joint action test, SEIU Opp'n at 22–23, so the court limits its analysis accordingly. *See Bain v. California Teachers Ass'n*, 156 F. Supp. 3d 1142, 1153 n.12 (C.D. Cal. 2015) ("Because satisfaction of one state action test can be sufficient the Court only analyzes the complained of conduct under Plaintiffs' strongest theory, the joint action test.").

2. SEIU

SEIU argues plaintiffs fail to state a valid § 1983 claim against the Union, because "[t]he state's ministerial processing of voluntary dues deductions does not transform the Union's private dues authorization agreements into state action." SEIU MTD at 15.

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013) (internal quotation marks, citations omitted). "A plaintiff may demonstrate joint action by proving that there was a conspiracy or by showing a private party was a willful participant in the joint action." *Bain*, 156 F. Supp. 3d at 1153 (citing *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002)). A joint action theory requires "a substantial degree of cooperation," *Franklin*, 312 F.3d at 444, and is supported "when the state knowingly accepts the benefits derived from unconstitutional behavior," *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1486 (9th Cir. 1995).

5

Plaintiffs argue "California law requires the State Controller to deduct union dues at an exclusive representative's behest," and "requires that SEIU have agreements with public authorities governing dues deductions for the State Controller to make those deductions," Opp'n to SEIU MTD at 22–23 (citing Cal. Welf. & Inst. Code § 12301.6(h)(2)).  In this way, plaintiff argues, SEIU "works 'hand in glove' with the State and local governments" to effectuate the dues deductions.  *Id.* at 23.

The court in *Belgau v. Inslee*, 359 F. Supp. 3d 1000 (W.D. Wash. 2019) analyzed a similar issue and found the state's fee deduction on behalf of the union did not render the union a state actor.  *Id.* at 1014.  As here, the plaintiffs in *Belgau* consented to union dues but tried to opt out of their union agreement after *Janus* was decided.  *Id.*  When the state continued to deduct dues from plaintiffs' paychecks, plaintiffs sued the union and the state claiming a violation of their First Amendment rights.  *Id.* at 1008.  The court analyzed whether the union's actions amounted to state action under all four tests announced in *Naoko* and concluded they did not.  *Id.* at 1013–14 (citing *Naoka Ohno*, 723 F.3d at 995–96).  In rejecting plaintiffs' argument that there was "joint action" because state law required the state to follow the union agreements by deducting union dues, the court explained this was merely an "administrative task" performed only after plaintiffs provided authorization, and the same task the state also performs for entities such as retirement and health plans.  *Id.* at 1014; *see also Tulsa Prof'l Collection Servs. v. Pope*, 485 U.S. 478, 485 (1988) ("Private use of state-sanctioned private remedies or procedures does not rise to the level of state action.").  The court in *Belgau* also found plaintiffs had not shown "the State Defendants in any meaningful way accept[ ] benefits derived from the allegedly unconstitutional actions," *Belgau*, 359 F. Supp. 3d at 1014 (alteration in original) (citing *Naoko Ohno*, 723 F.3d at 997) and, ultimately, they could not show "that the substance of the agreements are the product of joint action with the Union and the State Defendants." *Id.*

The same reasoning applies here; though there is a connection between the alleged constitutional violation and the state action, plaintiffs have not pled facts to show that the Union acted in concert with the state to cause the deduction of Union dues without a "valid waiver,"

especially given the state's lack of involvement in the drafting and executing of the Union agreements. *See* SEIU Not. of Suppl. Authority, ECF No. 50 (citing *Smith v. Teamsters Local 2010*, No. CV1900771PAFFMX, 2019 WL 6647935, at *7 (C.D. Cal. Dec. 3, 2019) (finding union not state actor under joint action tests where state was authorized to deduct union dues from employees' paychecks), *appeal filed*, No. 19-56504 (Dec. 26, 2019)); *see also Not. of Suppl. Auth., ECF No. 48 (*citing *Oliver v. Serv. Employees Int'l Union Local 668*, 415 F. Supp. 3d 602, 611–12 (E.D. Pa. 2019) (finding state's deduction of union dues was "strictly ministerial, implementing the instructions of the employee," who voluntarily agreed to become a dues-paying member); SEIU Not. of Suppl. Authority, ECF No. 52 (citing *Mendez v. California Teachers Ass'n, et al.*, 419 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020) (finding no state action and relevant state law authorizing deduction of union dues "set forth an administrative, ministerial mechanism for carrying out a deduction from the wages of those individuals who voluntarily elected to become union members"), *appeal filed*, No. 20-15394 (March 6, 2020)).

By contrast, the Seventh Circuit Court of Appeals came to the opposite conclusion in *Janus v. Am. Fed'n of State, Cty. & Mun. Employees, Council 31; AFL-CIO*, 942 F.3d 352, 361 (7th Cir. 2019) (*Janus II*), *pet. for cert. docketed*, No. 19-1104 (March 10, 2020), finding that the union defendant was a "joint participant with the state in the agency-fee arrangement" whereby the state deducted fees from employees' paychecks and transferred those funds to the union. *See* Not. of Suppl. Auth., ECF No. 46, at 2. "This is sufficient for the union's conduct to amount to state action" because the union is making "use of state procedures with the overt, significant assistance of state officials." *Janus II* at 361 (quoting *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478 (1988)). Defendants distinguish the case by pointing out: "The 'state action' at issue in *Janus* was *the government's requirement*, pursuant to an agreement with the union, that non-consenting public employees must pay fair-share fees *as a condition of public employment*." SEIU Resp. to Pls.' Suppl. Auth., ECF No. 47, at 2 (emphasis in original) (citations omitted). Here, by contrast, the state does not require membership in a union or payment of union dues as a condition of public employment. *Id.* Nonetheless, the Seventh Circuit did not cite this fact in its

analysis of the union's relationship with the state, but only the fact the state was "deducting fair-share fees from the employees' paychecks and transferr[ing] that money to the union." *Janus II*, 942 F.3d at 361.

Having considered these persuasive authorities, which are not controlling, the court joins the reasoning articulated in *Belgau* and several other district courts. Here, plaintiffs have not alleged that the State Defendants "affirm[ ], authorize[ ], encourage[ ], or facilitate[ ]" the contents of the agreements here, or the process by which the Union obtained plaintiffs' consent to those agreements. *Naoko Ohno*, 723 F.3d at 996. As the Supreme Court recently explained, the fact that the government "licenses [or] contracts with" a private entity, "does not convert the entity into a state actor." *Manhattan Community Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (June 17, 2019) (affirming dismissal of § 1983 claim against private operator of public access cable channels in part because "fact the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor—unless the private entity is performing a traditional, exclusive public function"), (cited in SEIU Not. of Suppl. Authority, ECF No. 39); *see also Bain*, 156 F. Supp. 3d at 1153 (finding no state action where, under state law, state participated in defining what must be paid by nonmembers, but state did not require or prohibit terms of membership to which plaintiffs objected); SEIU Not. of Suppl. Authority, ECF No. 57 (citing *Quezambra v. United Domestic Workers of Am. AFSCME Local 3930*, No. 819CV00927JLSJEM, 2020 WL 2988303, at *5 (C.D. Cal. June 3, 2020) (finding union not state actor under joint action test), *appeal filed,* No. 20-55643 (June 23, 2020)); SEIU Not. of Suppl. Authority, ECF No. 58 (citing *Schiewe v. Serv. Employees Int'l Union Local 503*, No. 3:20-CV-00519-JR, 2020 WL 4251801, at *5 (D. Or. July 23, 2020) (citing "growing case law" finding no state action where state deducted union fees based on valid dues agreement)).

Accordingly, SEIU is not a state actor under § 1983, and all three of plaintiffs' § 1983 claims against it, claims one, two and three, must be DISMISSED.

/////

B. <u>Eleventh Amendment Immunity (Defendant Yee)</u>

Defendant Yee, sued in her official capacity as the State Controller of California, argues plaintiffs' first two claims are barred by the Eleventh Amendment, because plaintiffs have not established the exception in *Ex parte Young* applies. Yee MTD at 10–12 (citing *Ex parte Young*, 209 U.S. 123, 155–56 (1908)). Yee argues plaintiffs have failed to allege a sufficient nexus between the Controller and (1) the Union's alleged failure to obtain a valid First Amendment waiver from plaintiffs and (2) the Union's revocation policy. *Id.*

"Under the Eleventh Amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court." *Mitchell v. Los Angeles Cty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (Eleventh Amendment proscribes suit against state agencies "regardless of the nature of the relief sought")). Because plaintiffs sue defendant Yee in her official capacity as the State Controller, their suit is not against her as an individual but against her office, which is no different from a suit against the state itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Thus, the Eleventh Amendment bars the suit unless the *Ex parte Young* exception applies. *See* 209 U.S. at 155–56.

The *Ex parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity for "prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex parte Young*, 209 U.S. at 155–56; *Alden v. Maine*, 527 U.S. 706, 747 (1999)). In applying this exception, "it [must be] plain that such officer must have some connection with the enforcement of the act, or else it is merely making [her] a party as a representative of the State, and thereby attempting to make the State a party." *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998) (quoting *Ex parte Young*, 209 U.S. at 157). Also, "[t]his connection must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit." *L.A. Cty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation omitted).

9

Plaintiffs request only prospective declaratory and injunctive relief against defendant Yee; their claim for damages is made only against SEIU, against which they also seek injunctive relief.[1]  FAC ¶¶ A–H.  Therefore, the *Ex parte Young* exception applies to claims against Yee if plaintiffs sufficiently allege a connection with the alleged First Amendment violations.

Yee argues the alleged violations arise out of SEIU's failure to obtain a valid First Amendment waiver from plaintiffs as well as SEIU's revocation policy, both of which involve SEIU's actions only.  *See* Yee MTD at 10–12.  However, plaintiffs' First Amendment claims appear to also arise out of the state's act of deducting union dues from plaintiffs' paychecks pursuant to that agreement and enforcing the Union's revocation policy.  *See* FAC ¶ 20 ("The State Controller, at the behest of SEIU Local 2015 and in coordination with it, has and will deduct union dues from IHSS payments made to providers . . . ."); *id.* ¶ 21 ("The State Controller . . . ultimately makes those deductions and transfers the monies to SEIU Local 2015); *id.* ¶ 26 ("[T]he State Controller [has] enforced, and will continue to enforce, their revocation policy against providers by deducting and collecting union dues from IHSS payments . . . .").

The deduction of dues from plaintiffs' paychecks is central to plaintiffs' First Amendment claims against the state, therefore plaintiffs have adequately pled a nexus between Yee as State Controller and the alleged violations.[2]  The complaint sufficiently describes the role of the Controller in deducting union dues and thereby enforcing the challenged agreements and

---

[1] Plaintiffs also request attorneys' fees from defendants generally, but this request does not change the analysis. Attorneys' fees are generally not barred by the Eleventh Amendment, as they are "ancillary" to an award of prospective relief. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 279–80 (1989) ("[T]he Eleventh Amendment has no application to an award of attorney's fees, ancillary to a grant of prospective relief, against a State.")

[2] The court clarifies that this conclusion and the court's conclusion regarding whether SEIU is a state actor for § 1983 purposes are not incongruent. The relevant inquiry for *Ex Parte Young* is whether plaintiffs allege that Yee was directly involved in the ministerial deduction of union dues, assuming *arguendo* that the deduction itself is unconstitutional. The question in the preceding section was whether the allegations show the Union and the state acted closely together to deduct plaintiffs' union dues such that the Union should be liable if the state's actions are found unconstitutional. In other words, the court finds the current allegations do not show joint action between the Union and the state, but they do show a sufficient connection between Yee and the alleged unconstitutional act of deducting union dues.

the revocation policy, allegedly in violation of the First Amendment. FAC ¶¶ 35–36 ("Polk again notified SEIU Local 2015 that she did not want to be a member . . . Notwithstanding Polk's lack of consent, the State Controller, at the behest of SEIU Local 2015, deducts union dues from IHSS payments made to Polk and remits those monies to SEIU Local 2015 . . . .").

Because plaintiffs have requested only prospective declaratory and injunctive relief against Yee and have adequately alleged a connection between Yee and the alleged violation, the Eleventh Amendment does not bar suit. *L.A. Cty. Bar Ass'n*, 979 F.2d at 704; *Ex parte Young*, 209 U.S. at 157. However, the key allegations appear in the complaint's general factual allegations, and not the specific claims. Any amended complaint should clarify precisely which claims are based on which allegations against defendant Yee.

### C.  First Amendment Claims (Claims One & Two)

#### 1.  No Heightened Waiver Requirement

Plaintiffs claim defendants are violating plaintiffs' First Amendment right by deducting union dues from plaintiffs' wages without a "valid waiver" FAC ¶¶ 83–87 (claim one), and by continuing to do so after plaintiffs rescinded their consent, pursuant to the Union's revocation policy, *id.* ¶¶ 89–93 (claim two) (citing *Harris*, 134 S. Ct. at 2618; *Janus*, 138 S. Ct. at 2486).

In *Janus*, the Supreme Court held: "Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages . . . unless the employee affirmatively consents to pay." 138 S. Ct. at 2486. Plaintiffs argue that in order for defendants to be able to deduct union dues, *Janus* requires defendants obtain not just "consent to pay," but an express waiver of a plaintiff's First Amendment rights. FAC ¶¶ 86 (claim one), 91 (claim two). Specifically, plaintiffs allege the agreement must have actually "inform[ed] providers they have a First Amendment right not to financially support an exclusive representative and its speech [and] expressly state[d] that the provider agrees to waive his or her First Amendment rights . . . ." *Id.* ¶ 86. Because the membership agreements to which plaintiffs assented did not contain this information or express First Amendment waivers, plaintiffs argue, the agreement does not effect a valid waiver of plaintiffs' First Amendment right not to support the union, and defendants are

11

1   violating that right by continuing to deduct dues from plaintiffs' paychecks after plaintiffs

2   attempted to opt out. SEIU Opp'n at 9–11.

3   Plaintiffs misinterpret the holding in *Janus*, which analyzed whether "agency

4   fees," or a percentage of union dues, could be deducted from the income of a plaintiff who had

5   declined to join the union. *Id.* at 2460–61. The Supreme Court held:

> By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

10  *Id.* at 2486 (internal citations omitted). With this paragraph, the Court is simply restating the

11  existing standard for a valid waiver of constitutional rights, not establishing a new, heightened

12  requirement for a waiver of First Amendment rights in this particular context. *See Curtis Pub.*

13  *Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality opinion) ("Where the ultimate effect of

14  sustaining a claim of waiver might be an imposition on that valued freedom, we are unwilling to

15  find waiver in circumstances which fall short of being clear and compelling.") (cited in *Janus*,

16  138 S. Ct. at 2486); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S.

17  666, 681–82 (1999) ("[C]onstructive consent is not a doctrine commonly associated with the

18  surrender of constitutional rights. . . . The classic description of an effective waiver of a

19  constitutional right is the intentional relinquishment or abandonment of a known right or

20  privilege." (internal quotation marks and citations omitted) (cited in *Janus*, 138 S. Ct. at 2486).

21  In other words, plaintiffs must "clearly and affirmatively consent" to paying union dues, not

22  necessarily to waiving their First Amendment right in order to decline to pay union dues.

23  Other district courts have reached the same conclusion after *Janus*. *See* SEIU Not.

24  of Suppl. Authority, ECF No. 59 (citing *Creed v. Alaska State Employees Ass'n/AFSCME Local*

25  *52*, No. 3:20-CV-0065-HRH, 2020 WL 4004794, at *6–8 (D. Alaska July 15, 2020) (rejecting

26  plaintiffs' argument that union membership agreement violated First Amendment because it

27  lacked express First Amendment "waiver" after *Janus*)); Not. of Suppl. Authority, ECF No. 45

28  (citing *Anderson v. Serv. Employees Int'l Union Local 503*, 400 F. Supp. 3d 1113, 1116 (D. Or.

12

2019) (same)); SEIU Not. of Suppl. Authority, ECF No. 43 (citing *Seager v. United Teachers Los Angeles*, No. 219CV00469 JLS DFM, 2019 WL 3822001 (C.D. Cal. Aug. 14, 2019) (rejecting former union member's First Amendment "claim for dues already deducted pursuant to" plaintiff's union membership dues deduction agreement, because "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law") (citation omitted)); *Crockett v. NEA-Alaska*, 367 F. Supp. 3d 996, 1008 (D. Alaska 2019) ("*Janus* says nothing about people who join a union, agree to pay dues, and then later change their mind about paying union dues." (quoting *Belgau v. Inslee*, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018)), *appeal filed*, No. 19-35299 (April 12, 2019). And, in similar contexts, contracts that waive constitutional rights have been held enforceable without language expressly notifying the waiver of the constitutional rights at issue. *See Leonard v. Clark*, 12 F.3d 885, 890 (9th Cir. 1993), *as amended* (Mar. 8, 1994) (contract enforceable against union, even though contract did not expressly inform union of its First Amendment rights); *but see Gete v. I.N.S.*, 121 F.3d 1285, 1294 (9th Cir. 1997) (refusing to enforce waiver implied in plaintiff's agreement to pursue administrative remedies rather than invoking judicial forfeiture, where plaintiffs did not receive "any notice whatsoever that they were waiving their right to challenge the lawfulness of the process itself, let alone all of their rights under the first ten amendments to the Constitution").

None of the civil cases plaintiffs cite suggest the requirements for a valid waiver in this context are any different. *See* SEIU Opp'n at 9–12. For example, plaintiffs cite *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 187 (1972), for the proposition that "government enforcement of contracts [will] violate constitutional rights, unless there exists clear evidence of a waiver of those rights." SEIU Opp'n at 13. But in *D.H. Overmyer*, the court found the plaintiff had effectively waived his due process rights even though the court remained silent on whether the contract included a notice to defendant that he was waiving his due process rights, but ultimately found plaintiff "voluntarily, intelligently, and knowingly waived the rights it otherwise possessed . . . and that it did so with full awareness of the legal consequences." *D.H. Overmyer*, 405 U.S. at 187.

Further, plaintiffs' allegation in claim two, that the union dues agreements cannot be revoked except within a certain time frame, does not support a claim for a First Amendment violation. *See* FAC ¶¶ 89–93. The Ninth Circuit recently found, in an unpublished opinion:

> [D]eduction of union dues in accordance with the membership cards' dues irrevocability provision does not violate [plaintiffs'] First Amendment rights. Although [plaintiffs] resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of "legal obligations" that are bargained-for and "self-imposed" under state contract law.

*Fisk v. Inslee*, 759 F. App'x 632, 633 (9th Cir. 2019) (citing *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668–71 (1991). However, the *Fisk* court was not expressly presented with the question of whether the waiver at issue was knowing, voluntary and intelligent, though the court did include a description that suggests such an analysis would be appropriate. *Id.* at 633–34 ("The provisions authorizing the withholding of dues and making that authorization irrevocable for certain periods were in clear, readable type on a simple one-page form, well within the ken of unrepresented or lay parties."). The conclusion that revocation restrictions are enforceable does not necessarily preclude plaintiffs' claim that the agreements enforced here were not valid waivers of plaintiffs' First Amendment rights. However, because the court is dismissing the § 1983 claims against the Union for lack of state action, it need not analyze whether such a claim would survive here, as there are no allegations suggesting defendant Yee was involved in obtaining the waivers from plaintiffs or would otherwise be implicated in any such a claim. *See Mendez*, 419 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020) ("To the extent plaintiffs allege that the Union defendants misinformed them about their legal obligations to join the union or pay membership dues, their claims would be against the Union defendants under state law.").

        2.      <u>Application of *Janus* to Union Members and Non-Members</u>

At hearing, plaintiffs emphasized their argument that *Janus* should not be construed to apply only to non-members of unions. In other words, plaintiffs argue, union membership itself is not sufficient to establish a First Amendment waiver. SEIU Opp'n at 11 n.1. The court here is not suggesting union membership alone establishes a basis for a First Amendment waiver. As explained above, in order to collect dues from a member or a

nonmember, a union must be able to show the individual "clearly and affirmatively consent[ed] [to pay] before any money is taken from them[.]" *Janus*, 138 S. Ct. at 2486; *cf.* SEIU Not. Suppl. Authority, ECF No. 55 (citing *Durst v. Oregon Educ. Ass'n*, No. 1:19-CV-00905-MC, 2020 WL 1545484, at *4 (D. Or. Mar. 31, 2020) (finding *Janus* concerns only "nonconsenting employees, i.e., nonmembers" not those who "voluntarily joined their unions when they signed the membership cards")).

        D.      <u>Private Right of Action Created by Medicaid Statute (Claim Three)</u>

Plaintiffs' third claim alleges both defendants violated 42 U.S.C. § 1396a(a)(32) ("subdivision 32"), a provision of the Medicaid Act that states:

> A State plan for medical assistance must . . . .
>
> (32) provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise; except that—
> [listing exceptions] . . . .

42 U.S.C. § 1396a(a)(32). Both defendants argue plaintiffs fail to state a cognizable claim because § 1396a(a)(32) does not create a privately enforceable right. *See* Yee MTD at 13–15; SEIU MTD at 20, 24.

As the Ninth Circuit explained in *Planned Parenthood Arizona Inc. v. Betlach*, 727 F.3d 960 (9th Cir. 2013),

> to determine whether a federal statutory provision creates a private right enforceable under § 1983, we consider three factors: First, "Congress must have intended that the provision in question benefit the plaintiff"; second, the plaintiff must have "demonstrate[d] that the right assertedly protected . . . is not so 'vague and amorphous' that its enforcement would strain judicial competence"; and third, "the provision giving rise to the asserted right" must be "couched in mandatory, rather than precatory, terms."

*Id.* at 966 (quoting *Blessing v. Freestone*, 520 U.S. 329, 340–41 (1997)). Above all, however, the primary inquiry is "whether Congress *intended to create a federal right*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis in original).

Applying this analysis, federal courts have found that certain sections of § 1396a ("the Medicaid statute"), other than subdivision 32, create federal rights that can be privately

15

enforced through a § 1983 claim. *See, e.g.*, *Betlach*, 727 F.3d at 968 (§ 1396a(a)(23) confers a privately enforceable right); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 523 (1990) (health care provider could bring § 1983 claim to enforce 42 U.S.C. § 1396a(a)(13)(A)); *Doe v. Kidd*, 501 F.3d. 348, 356 (4th Cir. 2007) (claimant could seek to enforce 42 U.S.C. § 1396a(a)(8) through § 1983).

However, when another district court addressed the question with respect to subdivision 32 in particular, in *Transitional Servs. of New York for Long Island, Inc. v. New York State Office of Mental Health*, 91 F. Supp. 3d 438 (E.D.N.Y. 2015), that court found subdivision 32 did not create a privately enforceable right. The court based its finding primarily on the lack of congressional intent to create such a right, as evidenced by: (1) the legislative history and (2) the conditional language of subdivision 32. *Id.* at 443–44. As noted in SEIU's notice of supplemental authority, ECF No. 51, a court in the Northern District of California has recently come to a similar conclusion about subdivision 32, explaining:

> Section 32 does not create an individually enforceable right. The provision is embedded in a list of requirements for what state plans must contain, and these requirements are enforceable by the Secretary. The provision, on its face, restricts the entities to whom a payment can be made under the plan; it does not create an entitlement to payment.

*Aliser v. SEIU California*, 419 F. Supp. 3d 1161, 1168 (N.D. Cal. 2019) (internal citations omitted). As explained below, this court also finds section 32 does not create a privately enforceable right.

        1.    <u>Legislative History</u>

When analyzing whether a statute confers a private right, the primary inquiry is "whether Congress *intended to create a federal right*." *Gonzaga,* 536 U.S. at 284 (emphasis in original). The parties appear to agree that § 1396a(a)(32) was enacted to "prohibit financial middlemen who receive payment via the discounting of claims from receiving Medicaid funds," *Mack v. Secretary of the HHS*, No. 90–1427V, 1997 WL 74704, at *3 (Fed. Cl. Spec. Mstr. Feb. 3, 1997)), also known as "factoring," in an effort to curb inflated or fraudulent charges.

/////

16

Case 2:18-cv-02900-KJM-KJN   Document 60   Filed 08/24/20   Page 17 of 20

*See* SEIU MTD at 25 n.9; *see also* Yee MTD at 14; Opp'n to Yee MTD at 15 n.2.  As the *Transitional Services* court explained:

> [T]he purpose of the statute was to prevent healthcare providers from assigning their entitlement to reimbursement (from the state) to a third party:
>
> Prior to 1972, it was possible for state departments of public aid to reimburse medical providers at any address designated by the provider on the bill for services rendered. Quite frequently, physicians had their payment vouchers sent directly to factoring companies which would pay the provider at a discounted amount of the face value of the bills in exchange for an assignment of the physician's interest in the bills. In this manner, the provider obtained immediate payment for services rendered, albeit at a discounted rate. However, this system of payment was believed to be responsible for inflated and sometimes fraudulent charges for services rendered.  In response to this problem, Congress amended § 1396a(a) to stop the "factoring" of Medicaid receivables.

*Transitional Services,* 91 F. Supp. 3d at 443 (internal quotation marks omitted) (quoting *Michael Reese Physicians & Surgeons, S.C. v. Quern,* 606 F.2d 732, 734 (7th Cir.1979), *adopted en banc,* 625 F.2d 764 (7th Cir.1980)) (citing, *inter alia*, *Danvers Pathology Associates, Inc. v. Atkins,* 757 F.2d 427, 428–31 (1st Cir. 1985) (Breyer, J.) (discussing legislative history of § 1396a(a)(32))).

Thus, given that Congress's purpose in enacting subdivision 32 was to prevent providers from re-assigning their Medicaid receivables, there is no basis for concluding Congress intended to confer on providers a right to prevent third parties from taking a portion of their receivables.  *See* SEIU MTD at 26.

          2.     <u>Conditional Language</u>

A close reading of the subdivision 32 text also supports the conclusion that Congress did not intend the provision to create a privately enforceable right.  *See Transitional Services*, 91 F. Supp. 3d at 444.  For a statute to confer individuals such a right, "its text must be 'phrased in terms of the person benefitted.'"  *Id.* (quoting *Gonzaga*, 536 U.S. at 284).  Subdivision 32 is not so phrased; it requires that the state's Medicaid plan must provide that "no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an

17

assignment or . . . otherwise . . . ." 28 U.S.C. § 1396a(a)(32). "In other words," the *Transitional Services* court explained, "the provision states that *if* a payment is made to the provider under the plan, then it must be made to the provider alone. Thus, the provision does not require the state to issue any payment at all; instead, the provision places restrictions on who can receive such a payment." *Transitional Services* 91 F. Supp. 3d at 444 (emphasis in original).

Plaintiffs rely on *Betlach,* which analyzed a separate provision that required a state Medicaid plan to provide that "any individual eligible for medical assistance . . . may obtain such assistance from any institution . . . ." *Betlach*, 727 F.3d at 966 (citing 42 U.S.C. § 1396a(a)(23)). In contrast to subdivision 32, this provision contained rights-conferring language: "any individual . . . may obtain." *See id.* at 966–67. In subdivision 32, neither "individual" nor "provider" is the subject of the provision, and the statute is not phrased to affirmatively guarantee anything to either. Such an absence of rights-creating language suggests Congress did not "intend[] that the provision in question benefit" providers, *see id.* at 966 (citation omitted), and Congress's purpose, to curb Medicaid costs and fraud by preventing "factoring" of Medicaid receivables, further supports that conclusion.

As plaintiffs point out, the only other federal court to consider this question found that providers could enforce subdivision 32 through § 1983, based on its finding that subdivision 32 "creates a binding obligation for states to pay 'the person or institution providing such care or service,'" and it would "make little sense to give providers a right to receive payment without also providing a method to recover payment." *AHS Tulsa Reg'l Med. Ctr., LLC v. Fogarty*, No. 07-CV-338-CVE-SAJ, 2007 WL 3046441, at *2 (N.D. Okla. Oct. 16, 2007). The court is persuaded by the *Transitional Services* court explanation, however, which concluded the *AHS* court's "logic depended upon the erroneous premise that § 1396a(a)(32) confers 'a right to receive payment,'" *Transitional Services*, 91 F. Supp. 3d at 445, and declines to read language into the statute that Congress itself did not incorporate.

A recent decision from a court in the Southern District of California also supports the conclusion that subdivision 32 does not create a privately enforceable right. *See* SEIU Not. of Suppl. Authority, ECF No. 54 (citing *Quirarte v. United Domestic Workers AFSCME Local*

18

*393*0, 438 F. Supp. 3d 1108 (S.D. Cal. 2020), *appeal filed*, No. 20-55266 (March 11, 2020)). Just as here, in *Quirarte*, the court analyzed a claim by IHSS providers brought under § 1983 for a violation of subdivision 32 of the Medicaid Act. The court found the subdivision does not create a private right of action under § 1983, because "[o]n its face, Section 32 restricts the entities to whom a payment can be made under the plan; it does not create an entitlement to payment," and it lacks "rights-conferring language." *Quirarte*, 438 F. Supp. 3d at 1119–20.

      3.  Plaintiffs' Supplemental Authority

    On May 6, 2019, after the court heard the instant motion, the Centers for Medicare & Medicaid Services issued a Final Rule entitled *Reassignment of Medicaid Provider Claims*, 84 Fed. Reg. 19718-01. Pls.' Not. of Suppl. Authority, ECF No. 38, at 2. The new rule, which took effect on July 5, 2019, removed 42 C.F.R. § 447.10(g)(4), which previously allowed Medicare practitioners to divert part of their paycheck to a third party "for benefits such as health insurance, skills training and other benefits customary for employees." *See* 84 Fed. Reg. 19718-01; 42 C.F.R. § 447 (effective July 5, 2019). In their notice of supplemental authority, plaintiffs argue this rule is relevant to their opposition because the new rule "rescind[s] a prior regulation that may have permitted reassignment because it violated [subdivision 32]. . . and 'eliminate[s] a providers' ability to reassign portions of their reimbursements to contribute to union dues.'" Pls.' Not. of Suppl. Auth. (quoting 84 Fed. Reg. at 19724).

    This supplemental authority does not change the analysis above. First, the Centers' new rule eliminating a previous reassignment provision may provide some insight regarding the Centers' interpretation of subdivision 32 as it applies to the ability to promulgate regulations; it does not provide any new insight into the intent of Congress in enacting subdivision 32, which is the relevant inquiry under *Gonzaga,* 536 U.S. at 284. Second, while the new rule removes a regulation that may have been relevant to whether defendants had violated subdivision 32, it is not relevant to whether Congress created an enforceable right in the first place.

    Also, in its explanation of the new rule, the agency states, "In regard to existing state laws surrounding union membership, if state law(s) and/or regulation(s) conflict with

§ 447.10 after the removal of paragraph (g)(4), the state Medicaid agency will need to take corrective action to comply with current federal statute and regulations." 84 Fed. Reg. at 19723. In other words, the rule directs state Medicaid agencies to come into compliance with this regulation and, by extension, with the Centers' interpretation of subdivision 32; it does not make any mention of private litigants' ability to enforce subdivision 32. This explanation further counsels against finding subdivision 32 created a privately enforceable right.

For all these reasons, the Centers' new rule, 84 Fed. Reg. 19718-01, does not affect the outcome of this motion. The court finds subdivision 32 does not confer a privately enforceable federal right upon medical providers. In light of this conclusion, the court declines to reach the question whether defendants' alleged actions can violate subdivision 32. Defendants' motions to dismiss plaintiffs' third claim is GRANTED.

IV.   CONCLUSION

For the reasons set forth above, the court GRANTS both defendants' motions to dismiss all of plaintiffs' claims. Amendment of claim three would be futile given the court's finding 42 U.S.C. § 1396a(a)(32) does not create a privately enforceable right. Therefore, the court does not grant leave to amend claim three. Where amendment would not necessarily be futile, leave to amend should be freely granted. *See Ascon Props.*, 866 F.2d at 1160. Accordingly, the court GRANTS plaintiffs leave to amend claims one and two, subject to the pleading requirements of Federal Rule of Procedure 11.

IT IS SO ORDERED.

DATED: August 24, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE